**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EUGENE DIVISION**

KATIE MIDDLETON,

Plaintiff,

v.

SILVER FALLS SCHOOL DISTRICT; THERESE GERLITS, in her individual and official capacities; DAN BUSCH, in his individual and official capacities; JOSH CRAIG, in his individual and official capacities; JAMIE MCCARTY, in his individual and official capacities; SCOTT HUCKINS, in his individual and official capacities,

Defendants.

Civ. No. 6:26-cv-00729-AA

**OPINION & ORDER**

---

AIKEN, District Judge:

In her Second Amended Complaint ("SAC"), self-represented Plaintiff Katie Middleton brings federal and state claims against Silver Falls School District and school employees Therese Gerlits, Dan Busch, Josh Craig, Jamie McCarty, and Scott Huckins (collectively "Defendants"). Defendants move to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 5. For the following reasons, Defendants' Motion, ECF No. 5, is GRANTED. Plaintiff's claims are dismissed with leave to amend.

## BACKGROUND

The Court deciphers the following from Plaintiff's SAC. Plaintiff "is the parent of a student eligible for and protected under the McKenney-Vento Homeless Assistance Act, 42 U.S.C. § 11431 et seq.[,] SAC ¶ 12. Plaintiff's daughter was the subject of a bullying incident at school and reported the incident to a teacher, but the report was allegedly dismissed. *Id.* ¶¶ 3, 10, 14, 15.

Plaintiff then "participated in a phone call with the District personnel related [to] an incident to [her] Child's education." *Id.* ¶ 20. Plaintiff recorded that call without informing the other individuals on the call. *Id.* ¶¶ 21, 22. An in-person meeting with school personnel was arranged for October 16, 2023. *Id.* ¶¶ 16, 17. But prior to the October 16, 2023 meeting, "Defendants[] Therese Gerlits and Josh Craig had a meeting about Plaintiff and Plaintiff's daughter[.]" *Id.* ¶ 18.

At the October 16, 2023 meeting, Plaintiff was surprised to find that Defendant Gerlits was present. Plaintiff had understood that the meeting was to "include Defendants Josh Craig, Defendant Scott Huckins, Plaintiff and Student." *Id.* ¶ 17. Without clear explanation, Plaintiff alleges that she was "lured into the meeting under false pretenses." *Id.*

During the October 16, 2023 meeting, Plaintiff alleges that she informed school personnel that, "she recorded the call[,]" to which "one of District personnel in the meeting abruptly aggressively reacted." *Id.* ¶ 22. Plaintiff alleges that "Defendant[] Therese Gerlits escalated the situation, falsely accused Plaintiff of illegal conduct, ordered her to leave and be removed from the school[.]" *Id.* ¶ 4. "[Plaintiff] informed

District Personnel that [she] was having a panic attack and requested a minute to compose [her]self." *Id.* ¶ 23. Plaintiff "was ordered to leave under the threat of law enforcement[,]" *id.* ¶ 25, and "was given an eight-second countdown and then issued a Criminal Trespass Warning, delivered . . . by an officer, barring [her] for one year from all District property[,]" *id.* ¶ 26. Plaintiff alleges that the Trespass Warning was given without "notice of a hearing, an opportunity to be heard, or any appeal process." *Id.* ¶ 27. And she alleges that "[t]he Trespass order interfered with [her] ability to participate in [her] children's education and McKenney-Vento protections." *Id.* ¶ 28.

## PROCEDURAL HISTORY

On October 16, 2025, Plaintiff filed a Complaint in Marion County Circuit Court alleging state-law claims against Defendants. ECF No. 1-1. On December 12, 2025, Defendants moved to dismiss the Complaint. ECF No. 1-2. On December 22, 2025, before the court had ruled on the motion to dismiss, Plaintiff amended her claims. First Am. Compl. ("FAC"), ECF No. 1-3. On February 25, 2026, the Marion County Circuit Court dismissed Plaintiff's FAC with leave to amend. ECF No. 1-8. On March 12, 2026, Plaintiff filed a Second Amended Complaint to which she added federal civil rights claims. Second Am. Compl. ("SAC"), ECF No. 1-11. On April 13, 2026, Defendants removed the case to this Court. ECF No. 1. Defendants move to dismiss Plaintiff's SAC, the operative complaint, under Federal Rule 12(b)(6) for failure to state a claim.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's allegations, a court must accept a plaintiff's allegations of fact as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation" of the action's elements. *Id.* (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## DISCUSSION

Plaintiff brings two § 1983 claims, a federal and state disability discrimination claim, and four state-law claims against Defendants.

I. *Section 1983 Claims*

Plaintiff brings § 1983 claims for money damages, including punitive damages, and for injunctive and declaratory relief against school district employees Gerlits and Busch, in their official and personal capacities, and against the Silver Falls School District. SAC at page 6.

To prevail under 42 U.S.C. § 1983, a plaintiff must prove: (1) that the plaintiff was "deprived of a right secured by the Constitution or laws of the United States," and (2) "that the alleged deprivation was committed under color of state law." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

A. *First Amendment Retaliation Claim*

Plaintiff alleges a § 1983 claim against Defendants Gerlits and Busch and the Silver Falls School District for violating her First Amendment rights by retaliating against her for protected expressive activity. SAC at page 6.

To establish a First Amendment retaliation claim, a plaintiff "must show that (1) they were engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Black Lives Matter Seattle-King Cnty. v. City of*

*Seattle, Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1212 (W.D. Wash. 2020) (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

Here, Plaintiff alleges that she "engaged in protected activity, including lawful recording, advocacy for [her] child, and requesting accommodations." SAC ¶ 30. Plaintiff alleges that Defendants retaliated against her "by issuing a year-long Trespass exclusion," which was an "adverse action . . . causally connected to Plaintiff's protected conduct." *Id.* ¶ 33.

Accepting Plaintiff's facts as true, that she was engaged in advocacy for her child, a protected activity, Plaintiff's facts do not support that the advocacy was a substantial motivating force for the issuance of the "Trespass exclusion." Plaintiff alleges that the "Trespass exclusion" was issued *after* Plaintiff confessed that "she had recorded a prior telephone conversation" without Defendants' knowledge. SAC ¶¶ 21, 22. Plaintiff alleges that Defendant Gerlits "abruptly aggressively reacted[,]" *id.* ¶ 22, "falsely accused Plaintiff of illegal conduct, ordered her to leave[,]" *id.* ¶ 4, "was given an eight-second countdown and then issued a Criminal Trespass Warning," *id.* ¶ 26. Plaintiff's facts indicate that the adverse action was substantially motivated not by Plaintiff's advocacy, but by Plaintiff's disclosure that she had recorded a phone call and the heated exchange that ensued. Accordingly, because Plaintiff fails to allege plausible facts that her protected activity was the substantial motivating force behind the "Trespass exclusion," Plaintiff fails to state a First Amendment retaliation claim.

As to Plaintiff's constitutional claim against the Silver Falls School District, "[i]t is well-established that a school district cannot be sued for damages under § 1983." *C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1247 (9th Cir. 2015); *see also Belanger v. Madera Unified Sch. Dist.,* 963 F.2d 248, 254 (9th Cir. 1992)) (explaining that school districts are state agencies for purposes of Eleventh Amendment immunity and are immune from suit for money damages under § 1983). However, school districts, like municipalities, may be sued under § 1983 for injunctive or declaratory relief where a Plaintiff alleges a *Monell* claim. *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) (citing *Monell v. Department of Soc. Servs. of New York*, 436 U.S. 658, 692 (1978)).

Plaintiff, in fact, alleges a *Monell* claim against the Silver Falls School District for violation of her First Amendment rights. SAC at page 11.

To prevail on a *Monell* claim, a plaintiff must show that (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernadino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). "A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" *Lytle,* 382 at 982 (quoting *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003)).

Plaintiff alleges that "[t]he constitutional violations described herein were caused by policies, customs, or practices of the school district[,]" SAC ¶ 79, "[t]he district failed to properly train and supervise employees regarding the use of Criminal Trespass Warnings and interactions with parents[,]" *id.* ¶ 80, and "[t]hese failures caused the depreciation of Plaintiff's rights[,]" *id.* ¶ 81.

Plaintiff's § 1983 *Monell* claim fails because Plaintiff fails to provide facts to support each element of a *Monell* claim. To survive a motion to dismiss, a complaint that alleges a *Monell* claim must contain sufficient factual allegations to satisfy all four elements of that claim. *See Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011); *see also Price v. City of Corning, Cal.*, No. 1:13-cv-01730-CL, 2014 WL 3362296, at *2 (D. Or. May 13, 2014) ("[P]laintiff has failed to make out a § 1983 claim against defendant City of Corning by pleading all four elements of a *Monell* claim.").

First, for the reasons explained above, Plaintiff fails to allege plausible facts to support that she was deprived of her First Amendment rights due to retaliation. Second, Plaintiff's conclusory allegation that "[t]he district failed to properly train and supervise employees regarding the use of Criminal Trespass Warnings and interactions with parents[,]" SAC ¶ 80, is insufficient to support a *Monell* claim. "Courts have repeatedly rejected sweeping allegations of policies and customs in the absence of facts supporting their existence and applicability." *Jones v. Cnty. of San Diego*, No. 20CV1989-GPC(DEB), 2022 WL 718491, at *10 (S.D. Cal. Mar. 10, 2022); *see also Moore v. City of Orange*, Case No. SACV 17-01024 JVS(JCGx), 2017 WL 10518114, at *3-4 (C.D. Cal. Sep. 25, 2017) ("speculative list of various customs,

policies, and practices that allegedly violated [plaintiff's constitutional rights]" insufficient to plead *Monell* claim).

Finally, A *Monell* claim based on failure to train or supervise requires a plaintiff to allege facts to support a pattern of repeated or knowing constitutional violations sufficient to constitute deliberate indifference. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.").

In sum, Plaintiff's facts, accepted as true, do not support a § 1983 First Amendment retaliation claim against Defendants Gerlits or Busch. Nor do they support a *Monell* claim against the Silver Falls School District for violating Plaintiff's First Amendment rights.

B. *Fourteenth Amendment Due Process Claim*

Plaintiff alleges a § 1983 claim for violation of her Fourteenth Amendment Due Process rights against Defendants Gerlits and Busch and the Silver Falls School District. SAC at page 7.

"The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "A Section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Id.*

Plaintiff alleges that the Trespass Warning was given without "notice of a hearing, an opportunity to be heard, or any appeal process." *Id.* ¶ 27. Plaintiff alleges that "[she] had a protected liberty and property interest in accessing public school property and participating in [her] children's education[,]" SAC ¶ 39, and that "Defendants deprived [her] of those interests without notice, hearing, or opportunity to be heard[,]" *id.* ¶ 40.

The Supreme Court has recognized "the liberty of parents and guardians to direct the upbringing and education of children under their control" as a "right[] guaranteed by the Constitution[.]" *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534–35 (1925). "[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the U.S. Supreme Court]." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66 (collecting cases).

However, "a parent's fundamental liberty interest in the care of his or her children" does not include "a parental right to physically access a child's school." *T.L. ex rel. Lowry v. Sherwood Charter Sch.*, No. 03:13-CV-01562-HZ, 2014 WL 897123, at *3 (D. Or. Mar. 6, 2014), *aff'd sub nom. Lowry v. Sherwood Charter Sch.*, 691 F. App'x 310 (9th Cir. 2017). Courts have not "extended a parent's fundamental liberty interest in the care of his or her children to a parental right to physically access a

child's school." *Id.* at *3–4 (collecting cases). And "because there is no constitutional right to be on school property, no procedural due process protections are required before prohibiting a parent's access." *Id.* at *4.

Here, Plaintiff alleges that Defendants deprived her of the ability to access school property without notice and opportunity to be heard. But Defendants are not required to provide notice or opportunity to be heard before barring a parent from school grounds because parents do not have a right to physically access school grounds. Accordingly, accepting Plaintiff's facts as true, the Court concludes that Plaintiff fails to allege a violation of her Fourteenth Amendment Due Process rights because she has no liberty interest in accessing school property.

Plaintiff also alleges that "[t]he Trespass order interfered with [her] ability to participate in [her] children's education and McKenney-Vento protections." SAC ¶ 28. Indeed, Plaintiff has a liberty interest in participating in her children's education. *Pierce,* 268 U.S. at 534–35 (recognizing parents' liberty interest in "direct[ing] the . . . education of children under their control"). However, Plaintiff need not access school grounds to participate in her children's education. Plaintiff has emailed school personnel and has attended telephone meetings with school personnel to participate in her children's education. *Id.* ¶¶ 9, 10, 20.

Finally, Plaintiff brings a *Monell* claim against the School District for violation of her Fourteenth Amendment Due Process rights. SAC at page 11. Plaintiff's § 1983 *Monell* claim against the School District fails because Plaintiff does not satisfy the first element of a *Monell* claim. Under Plaintiff's facts, accepted as true, she was not

deprived of a constitution right, her Fourteenth Amendment Right to Due Process. As explained above, Plaintiff does not have a right (liberty interest) to be on school property. For that reason, the School District is not required to provide notice or opportunity to be heard before barring Plaintiff from school property. Though Plaintiff has a right (liberty interest) to participate in her children's education, barring Plaintiff from school property does not deprive her of this right because Plaintiff can participate in her children's education by using email or phone to communicate with school personnel.

Accordingly, Plaintiff's facts, accepted as true, fail to support a § 1983 Fourteenth Amendment claim against Defendants Gerlits or Busch. Nor do they support a *Monell* claim against the Silver Falls School District for violating her Fourteenth Amendment rights.

II. *Disability Discrimination Claim*

Plaintiff alleges a disability discrimination claim against Gerlits and the Silver Falls School District. SAC at page 7.

Plaintiff alleges that "[she] experienced a panic attack[,]" *id.* ¶ 35, that "[she] disclosed conditions to Defendant Therese Gerlits and requested accommodations[,]" *id.* ¶ 36, and that "Gerlits denied accommodation and instead dismissed the plaintiff's verbally stated disclosure[,]" *id.* ¶ 37.

Plaintiff does not say under what law she brings her disability discrimination claim. The Court presumes that Plaintiff brings her claim under both federal and state law. Accordingly, Title II of the Americans with Disabilities Act ("ADA") and

its Oregon analogue, ORS 659A.142, apply to her claim.[1] 42 U.S.C. § 12132; ORS 659A.142; *Fenimore v. Blachly-Lane Cnty. C.E.A.*, 441 P.3d 699, 706 (Or. Ct. App. 2019) (Oregon courts construe ORS 659A.142 "to the extent possible in a manner that is consistent with any similar provisions of the . . . [ADA]."). Title II prohibits public entities such as public schools from discriminating on the basis of disability. 42 U.S.C. § 12132.

To state a Title II claim, a plaintiff must show that: (1) they are a 'qualified individual with a disability'; (2) they were either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or were otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of their disability. *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021) (internal citation and quotation marks omitted) (quoting 42 U.S.C. § 12132).

Plaintiff does not state a disability discrimination claim under Title II or Oregon law. First, Plaintiff does not plausibly allege that she is a "qualified individual with a disability," nor does she allege that she informed Defendants that she was a qualified individual with a disability.[2] Rather, Plaintiff alleges that she

---

[1] Plaintiff is not bringing her disability discrimination claim as an employee, so Title I of the American with Disabilities Act ("ADA"), which bars discrimination in the workplace, does not apply.

[2] A "qualified individual with a disability" is "an individual with a disability who . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). "[I]n Title II a person is 'qualified' if the person is eligible to receive services or participate in a publicly provided program[]" for a disability. *Zimmerman v. Oregon Dep't of Just.*, 170 F.3d 1169, 1176 (9th Cir. 1999). A "disability" is a "(A)

told Defendants that she was having a panic attack. *See* SAC ¶ 23 ("I, plaintiff, informed District Personnel that I was having a panic attack and requested a minute to compose myself."). A plaintiff's conclusory statement that she suffers from a disability, without more, is insufficient to show that the plaintiff is a qualified individual with a disability under the ADA. *Wilkey v. Cnty. of Orange*, 295 F. Supp. 3d 1086, 1091 (C.D. Cal. 2017)) (citing *Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996)). Second, Plaintiff's facts do not support that she was asked to leave the school meeting are barred from school grounds because of the alleged disability, her panic attack. Plaintiff alleges that she was asked or ordered to leave after a heated exchange with school employees that resulted from Plaintiff's disclosure that she had recorded a phone call with Defendants. *See id.* ¶¶ 22–26.

Accordingly, Plaintiff's facts, accepted as true and viewed in the light most favorable to Plaintiff, fail to support a disability discrimination claim under Title II or Oregon law.

---

a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102. A person is substantially limited in a major life activity when that person is "unable to perform the major life activity" or is "significantly restricted as to condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 885 (9th Cir. 2004) (quoting 29 C.F.R. § 1630.2(j)).

## III. *State-law Claims*

Plaintiff alleges four state-law claims against Defendants.

### A. *Negligence*

Plaintiff alleges "Negligence, Operational Negligence, Negligence Per Se" against all Defendants. SAC at page 8.

In Oregon, a negligence claim requires a plaintiff to show

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Moody v. Or. Comm. Credit Union*, 371 Or. 772, 784 (2023) (quoting *Solberg v. Johnson*, 306 Or. 484, 490–91 (1988)).

Plaintiff first alleges a negligence claim on behalf of her daughter. Plaintiff alleges that "[a] special relationship existed due to Defen[d]ants' authority and control[,]" SAC ¶ 52, and that "Defendants breached that duty[,]" *id.* ¶ 53, by failing to "establish[] district anti-bullying procedure(s)[,]" *id.* ¶ 55, and by failing to "investigate or address the bullying report[,]" *id.* ¶ 56, which "[led] to an unsafe school environment for Plaintiff's daughter[,]" *id.*

Plaintiff fails to state a negligence claim on behalf of her daughter because a *pro se* litigant may not represent any party other than herself. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 663 (9th Cir. 2008) ("It is well established that the privilege

to represent oneself *pro se* provided by [28 U.S.C.] § 1654 is personal to the litigant and does not extend to other parties or entities.").

Plaintiff also alleges a negligence claim for harm to herself. Plaintiff alleges that Defendants "owed Plaintiff a duty of reasonable care[,]" SAC ¶ 51, that Defendants breached that duty by "[i]ssuance of a Criminal Trespass Warning . . . as there was no cause[,]" *id.* ¶¶ 53, 59, and that "Defendants[] saw foreseeable harm to Plaintiff[,]" *id.* ¶ 59.

Plaintiff fails to allege facts to support that Defendants acted unreasonably. Nor does Plaintiff allege that she suffered physical injury as a result of the Trespass Warning. The Oregon Supreme Court "consistently has rejected claims for emotional distress damages caused by a defendant's negligence, in the absence of any physical injury." *Paul v. Providence Health System-Oregon*, 351 Or. 587, 597 (2012); *see also Hammond v. Central Lane Communications Ctr.*, 312 Or. 17, 23 (1991) ("[W]e have not yet extended liability for ordinary negligence to solely psychic or emotional injury not accompanying any actual or threatened physical harm or any injury to another legally protected interest." (internal citation and quotation marks omitted)).

Plaintiff also fails to state a claim for negligence *per se* because not only do her facts not support the elements of negligence, but also she fails to state the rule or statute on which her negligence *per se* claim is based. "Negligence *per se* . . . is a shorthand descriptor for a negligence claim in which the standard of care is expressed by a statute or rule." *Deckard v. Bunch*, 358 Or. 754, 761 n.6 (2016) (internal citation and quotation marks omitted). "When a negligence claim otherwise exists, and a

statute or rule defines the standard of care expected of a reasonably prudent person under the circumstances, a violation of that statute or rule establishes a presumption of negligence." *Moody v. Oregon Cmty. Credit Union*, 371 Or. 772, 782 (2023) (quoting *Deckard*, 358 Or. at 761).

Accordingly, Plaintiff's facts, accepted as true, fail to support a negligence or negligence *per se* claim against any Defendant.

B. *Defamation*

Plaintiff alleges a defamation claim against Defendants Gerlits and McCarty. SAC at page 9.

Plaintiff alleges that "Defendant made a false statement implying Plaintiff was dangerous and unlawful[,]" SAC ¶ 61; that "[s]tatements were published to third parties[,]" *id.* ¶ 62; that "[P]laintiff was treated like a criminal[,]" *id.* ¶ 63; and that "Plaintiff suffered reputational harm[,]" *id.* ¶ 64. Defendants contend that "Plaintiff . . . fail[s] to state sufficient facts to establish an actionable defamation claim." Def. Mot. at 10.

In Oregon, the elements of a defamation claim are: "(1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm." *Nat'l Union Fire Ins. Co. of Pittsburgh Pennsylvania v. Starplex Corp.*, 220 Or. App. 560, 584 (2008).

Plaintiff brings the claim against two Defendants but does not specify which Defendant wrote or spoke the allegedly defamatory statement. Nor does Plaintiff

allege the content of such statement(s). Elsewhere in her complaint, Plaintiff alleges that "Defendant[] Therese Gerlits escalated the situation, falsely accused Plaintiff of illegal conduct, ordered her to leave and be removed from the school[.]" SAC ¶ 4. The Court infers that Gerlits' spoken statement is the allegedly "false statement" made in response to Plaintiff's confession that Plaintiff had recorded their prior phone conversation.

"[D]efamation claims premised on an oral statement (slander) require that a plaintiff prove either that the statement falls within one of the actionable per se categories or that the statement caused the plaintiff 'special damage.'" *Kofoed v. Rosendin Elec., Inc.*, 157 F. Supp. 2d 1152, 1158 (D. Or. 2001). To show special damage resulting from slander, a plaintiff must plead loss of a "pecuniary character" or "loss of some substantial or material advantage[.]" *L & D of Oregon, Inc. v. Am. States Ins. Co.*, 171 Or. App. 17, 28 (2000). Here, Plaintiff does not plead slander *per se*, nor does she plead that she suffered special damages.[3]

[3] Based on Plaintiffs facts, assumed to be true, Plaintiff could not sustain a claim of libel *per se*. In Oregon, statements that constitute libel *per se* must fall into one of four possible categories: (1) defamatory words that impute "a crime involving moral turpitude;" (2) defamatory words that impute infection with a contagious disease; (3) defamatory words that impute unfitness to perform the duties of an office or employment; and (4) defamatory words that prejudice a party in profession or trade. *Barnett v. Phelps*, 97 Or. 242, 244–45 (1920). A statement alleging that Plaintiff recorded a phone call to which she was a party does not impute a crime of moral turpitude to Plaintiff because such recording is not unlawful in Oregon. *See* ORS § 165.540 ("[A] person may not obtain or attempt to obtain the whole or any part of a telecommunication . . . to which the person is not a participant, by means of any device, contrivance, machine or apparatus . . . unless consent is given by at least one participant.")

In sum, Plaintiff's facts, accepted as true and viewed in the light most favorable to Plaintiff, fail to state a defamation claim because Plaintiff fails to allege who made a false statement, the contents of the false statement and, if slander, special damages.

C. *Intentional Infliction of Emotional Distress*

Plaintiff alleges Intentional Infliction of Emotional Distress ("IIED") against Defendants Gerlits and Busch and the Silver Falls School District. SAC at page 9.

In Oregon, an IIED claim must allege "(1) that defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) that defendants engaged in outrageous conduct, *i.e.,* conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) that defendants' conduct in fact caused plaintiff severe emotional distress." *House v. Hicks*, 218 Or. App. 348, 357–58 (2008).

Plaintiff alleges that "Defendant engaged in extreme and outrageous conduct[,]" SAC ¶ 65; the "[c]onduct was intentional and reckless[,]" *id.* ¶ 66; and "Plaintiff suffered severe emotional distress[,]" *id.* ¶ 67. Defendants contend that "Plaintiff . . . fail[s] to allege any conduct that meets the bar required for an actionable IIED claim." Def. Mot. at 11.

"Because proof of intent is often indirect[,] . . . proof of this tort largely turns on the second element, whether a defendant's conduct is sufficiently outrageous." *House*, 218 Or. App. at 358. Under Oregon law, "a trial court plays a gatekeeper role in evaluating the viability of an IIED claim . . . goes beyond the farthest reaches of socially tolerable behavior[.]" *Id.* Extreme and outrageous conduct is a high bar that

"exceeds any reasonable limit of social toleration[.]" *Id.* at 358–59. Insults, harsh words, rude conduct, and "affronts" do not constitute outrageous conduct. *Hall v. May Dep't Stores Co.*, 292 Or. 131, 135 (1981). Conduct that is "only aggravating, insensitive, petty, irritating, perhaps unlawful, and mean" is not "extreme and outrageous[,]" even where a special relationship exists. *Clemente v. State*, 227 Or. App. 434, 442–43 (2009).

Here, Plaintiff has not alleged facts to support that any Defendant engaged in extreme and outrageous behavior, nor does Plaintiff allege facts to support the other elements of this claim. Accordingly, Plaintiff's facts, accepted as true and viewed in the light most favorable to Plaintiff, do not support an IIED claim.

D. *Collusion*

Plaintiff alleges "Collusion" as a cause of action against Gerlits, Craig, Busch, McCarty, and the Silver Falls School District. SAC at page 9.

Plaintiff alleges that "[t]he October 16, 2023 meeting was supposed to be with Defendants Josh Craig and Scott Huckins." SAC ¶ 70. But Gerlits and Craig had a prior meeting and "decided against the meeting the plaintiff thought she was attending." *Id.* ¶ 71. Plaintiff alleges she was "deceived" and "lured into a meeting under false pretenses." *Id.* ¶¶ 68, 69. Plaintiff fails to allege a legal wrong or cause of action for her "collusion" claim and, for that reason, fails to state this claim.

IV. *Leave to Amend*

Plaintiff seeks "leave to file a Third Amended Complaint pursuant to Federal

Rule of Civil Procedure 15(a)(2)." Pl. Resp. at 14, ECF No. 10. Plaintiff has already amended her complaint twice, although the state court failed to explain how Plaintiff's complaint was deficient. *Pro se* pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Courts should construe pleadings by *pro se* plaintiffs liberally and afford *pro se* plaintiffs the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Further, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.* Though the Court is skeptical that, on this set of facts, Plaintiff can cure the deficiencies of her claims, the Court grants Plaintiff one more opportunity to try.

**CONCLUSION**

For the reasons explained above, Defendants' Motion, ECF No. 5, is GRANTED. Plaintiff's SAC is DISMISSED with thirty days leave to amend. Plaintiff shall have thirty days from the date of this Order to file an amended complaint. Plaintiff is advised that failure to file an amended complaint within the allotted time will result in dismissal of the action without further notice.

It is so ORDERED and DATED this ____9th____ day of November 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge